UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HOGAN BUFFKIN, Individually, and as Personal Representative of the Estate of REGINA WYNN BENTON BUFFKIN | C/A No: |
| AND | COMPLAINT |
| | JURY TRIAL DEMANDED |
| BRITANY M. VERIKAS, Individually, and as Personal Representative of the Estate of RHONDA BENTON RABB | |
| Plaintiffs | |
| vs. | |
| WMK TRUCKING, INC., ELKAY SOUTHERN CORPORATION ELKAY SALES, INC., AND TOTAL QUALITY LOGISTICS, LLC | |
| Defendants | |

## **COMPLAINT**

AND NOW COMES the Plaintiffs, Hogan Buffkin, Individually, and as Personal Representative of the Estate of Regina Wynn Benton Buffkin, and Britany M. Verikas, Individually, and as Personal Representative of the Estate of Rhonda Benton Rabb, by and through their legal counsel, hereby complain against the

Defendants, WMK Trucking, Inc., Elkay Southern Corporation, Elkay Sales, Inc., and Total Quality Logistics, LLC, and in support thereof avers follows:

## PARTIES

1.    Plaintiff, Hogan Buffkin is a competent adult individual who resides at 1265 Brittany Drive, Apt. C, Florence, South Carolina 29501.

2.    At all relevant times hereto, Hogan Buffkin was the Personal Representative of the Estate of Regina Benton Ruffkin, deceased ("Decedent Buffkin").

3.    Regina Wynn Benton Buffkin, deceased, was a competent adult individual who resided at 459 North Ebenezer Road, Florence, Florence County, South Carolina 29501.

4.    Plaintiff, Britany M. Verikas ("Ms. Verikas"), is a competent adult individual who resides at 401 Arbor Drive, Mars, Pennsylvana 16046.

5.    At all relevant times hereto, Ms. Verikas was the Personal Representative of the Estate of Rhonda Benton Rabb ("Decedent Rabb").

6.    Rhonda Benton Rabb, deceased, was a competent adult individual who resided at 224 E. Mciver Road, Darlington, South Carolina 29532.

7.    Upon information and belief, Defendant, WMK Trucking, Inc. ("WMK") is a California Corporation with a principal place of business at 6687 North Bain Avenue, Fresno, California 93722.

8.    WMK's USDOT number is listed as 3319689.

9.    WMK's MC number is listed as MC-1056050.

10.    Upon information and belief, Defendant, Elkay Southern Corporation ("Elkay") is an Illinois Corporation with a principal place of business at 855 Caton Road, Lumberton, North Carolina 28360.

11.    Upon information and belief, Defendant, Elkay Sales, Inc. ("Elkay Sales") is an Illinois Corporation with a principal place of business at 1333 Butterfield Road, Ste. 200, Downers Grove, Illinois 60515.

12.    Elkay Sales' USDOT number is listed as 3249333.

13.    Upon information and belief, Defendant, Total Quality Logistics, LLC ("TQL") is an Ohio Corporation with its headquarters located at 4289 Ivy Pointe Boulevard, Cincinnati, Ohio 45245.

14.    TQL's USDOT number is listed as 2223295.

15.    TQL's MC number is listed as MC-322572.

16.    At all times relevant hereto, Defendants were or should have been an authorized interstate motor carrier authorized to transport goods in interstate commerce and in the State of South Carolina pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the United States Department of Transportation ("USDOT").

17.     Accordingly, Defendants were subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, South Carolina Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

18.     Defendants WMK and Elkay Sales and TQL, in order to obtain DOT numbers were required to submit an OP-1 form containing a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that it has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that Defendant will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

19.     More specifically, each Form OP-1 submitted contained a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Defendants:

   a.  had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

   b.  can produce a copy of the FMCSRs;

c.  had and will have in place a driver safety training/orientation program;

d.  had and will have prepared and maintain an accident register;

e.  is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

f.  had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

g.  is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

h.  must comply with all pertinent Federal, State, local and tribunal statutory and regulatory requirements when operating within the United States.

20.    In order to obtain a DOT number, the Defendants and/or their authorized representative swore under the penalty of perjury to comply with the above "Safety Certifications."

21.    Vikramjeet Singh ("Mr. Singh") is, based upon information and belief, a competent adult individual who resides at 2502 LaCorte Place, Bakersfield, California 93313.

22.    At all times relevant hereto, Mr. Singh was a class A licensed commercial motor vehicle operator driving a 2021 Freightliner tractor trailer with

VIN number 3AKJHHDR2MSMA4483 (hereinafter "Freightliner") owned, leased, assigned, and/or operated by Defendants.

23.    Accordingly, Mr. Singh was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of commercial motor vehicles and trailers including, without limitation, South Carolina Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

24.    At all times relevant hereto, the Freightliner was owned, leased, assigned, and/or operated by Defendants and was being operated and/or controlled by Mr. Singh with the consent of the Defendants and for the financial benefit of Defendants.

25.    At all times relevant hereto, Mr. Singh was employed and/or contracted to perform services for and was operating the Freightliner for Defendants under the Defendants' USDOT operating authority and was subject to their supervision, control or right to control, such that Defendants should be considered his actual and statutory employer and therefore vicariously liable for Mr. Singh's negligence and recklessness.

26.    At all relevant times hereto, Mr. Singh was the servant, workman, and/or employee of Defendants and was acting in the course and scope of his

employment, under the direction, control, and authority of Defendants and was the permissive user on behalf of all Defendants, of the Freightliner involved in the crash.

27.    At all relevant times hereto, Mr. Singh was the agent of Defendants vested with actual and/or apparent authority of Defendants and was the permissive user on behalf of all Defendants, of the Freightliner involved in the crash.

28.    At all relevant times hereto, Defendants acted as a single entity and operated and conducted business as a single entity for transportation services in interstate commerce.

29.    At all relevant times hereto, Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, mutual contribution and this joint undertaking was memorialized in a contract.

30.    At all relevant times hereto, Defendants acted as a joint venture for transportation of goods in interstate commerce.

31.    At all relevant times hereto, Mr. Singh was driving a Freightliner owned, leased, assigned and/or operated by Defendants.

32.    Accordingly, all Defendants are personally liable, jointly and severally, in partnership, joint venture, or sole proprietorship for the crash that caused Plaintiffs to suffer serious, catastrophic and fatal injuries.

33.    Defendants acted in a manner that either alone, combined, and/or occurring with the actions of other Defendants, directly and proximately caused the crash and the resulting fatal injuries and death suffered by the Decedents.

34.    At all relevant times, the Defendants were liable for the actions and/or inactions of Mr. Singh as though the actions and/or inactions were performed by the entity themselves.

35.    At all relevant times, Mr. Singh failed to adjust the speed of the Freightliner to match the conditions on the roadway ahead in violation of the Commercial Motor Vehicle Manual 2.6 – Controlling Speed.

36.    At all relevant times, Mr. Singh failed to keep proper braking distance between the Freightliner and the Toyota operated and occupied by Plaintiffs' Decedents in violation of the Commercial Motor Vehicle Manual 2.6.1 – Stopping Distances.

37.    At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to S.C. Code Ann. § 56-5-10, *et seq.*

38.    At all relevant times, Plaintiffs' Decedents acted with due care and in no way caused or contributed to the crash that forms the basis of this lawsuit.

39.    Plaintiffs seek damages for all harms and losses permissible under the laws of South Carolina, including, but not limited to, funeral and burial expenses, costs of estate administration, profound psychological and emotional loss, conscious

pain and suffering, and such other injuries, damages, and losses as described more fully and compensable at law under the Wrongful Death Act and Survival Act, and the decisional law of this State interpreting those Acts, caused by the negligence and recklessness of the Defendants.

## JURISDICTION AND VENUE

40.    This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 because (a) there is complete diversity of citizenship between Plaintiffs and Defendants; and (b) the matter in controversy exceeds the jurisdictional limits.

41.    Pursuant to 28 U.S.C Section 1391, venue is proper in the Florence Division of the United States District Court, District of South Carolina, as a substantial part of the events giving rise to the lawsuit occurred in Dillon County.

## OPERATIVE FACTS COMMON TO ALL COUNTS

42.    The preceding paragraphs are incorporated herein as though fully set forth below.

43.    On July 14, 2021, at or around 11:35 a.m., Mr. Singh was operating the Freightliner owned, leased, and/or assigned by Defendants, WMK, Elkay and Elkay Sales.

44.    On July 14, 2021, at or around 11:35 a.m., Regina Buffkin was the operator of a 2019 Toyota and traveling Southbound on Interstate 95 ("I-95") near the town of Latta, Dillon County, South Carolina.

45.    Two additional passengers were also traveling in the Toyota at this date and time, M.G. (a minor child) and Rhonda Benton Rabb.

46.    At this date and time, Mr. Singh was operating the Freightliner Southbound on the same stretch of I-95 in Dillon County, South Carolina.

47.    At or around the aforementioned time and date, Mr. Singh, failing to realize that traffic ahead of him was reducing speed on I-95, violently struck the Toyota operated and occupied by Plaintiffs' Decedents.

48.    The force of the impact pushed the Toyota off the road causing it to strike a tree before overturning and coming to its final resting position.

49.    Due to the sheer velocity of the impact of the Freightliner driven by Mr. Singh, Regina Wynn Benton Buffkin (operator) and Rhonda Benton Rabb (passenger) of the Toyota were tragically killed.

50.    As a result of the Crash, Mr. Singh was cited for the following FMCSA violations:

      a. Driving beyond his fourteen (14) hour duty period in violation of FMCSA 395.3A2-PROP;

      b. Driving beyond his eleven (11) hour duty period in violation of FMCSA 395.3A3-PROP;

    c. False report of driver's record of duty status in violation of FMCSA 395.8E;

    d. False report of driver's record of duty status in violation of FMCSA 395.8E;

    e. False report of driver's record of duty status in violation of FMCSA 395.8E; and

    f. False report of driver's record of duty status in violation of FMCSA 395.8E.

51.     At all relevant times hereto, Mr. Singh exhibited a conscious disregard for the health and safety of the motoring public by operating the Freightliner over his hour limit as set forth in the FMCSA.

52.     At all relevant times hereto, Mr. Singh exhibited a conscious disregard for the health and safety of the motoring public by operating the Freightliner at dangerously high speeds for the conditions.

53.     At all relevant times hereto, Mr. Singh operated the Freightliner in such a reckless, careless, and negligent manner, that he did not notice traffic ahead of him was slowing down in the moments leading up to the crash.

54.     As a result of the crash, as well as the negligence, carelessness, and recklessness of Defendants, Regina Wynn Benton Buffkin, the Estate of Regina Wynn Benton Buffkin, Plaintiff, and the Decedent's family, have suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses including, but not limited to:

a.     Funeral and burial expenses;

b.     Costs of Estate administration;

c.     Profound psychological and emotional loss;

d.     Pre-death fright and fear of impending death;

e.     Conscious pain and suffering;

f.     Loss of the comfort, care, and society of Regina Benton Buffkin.; and

g.     Such other injuries, damages and losses described more fully herein and compensable at law under the Wrongful Death Act and the Survival Act, and the decisional law of South Carolina interpreting those Acts.

54.     The economic and non-economic injuries, damages and losses suffered by the Estate of Regina Wynn Benton Buffkin, Plaintiff Hogan Buffkin, and the Decedent's family, were caused solely and exclusively by the negligence of Defendants, as described herein, and were not caused or contributed to by any act or failure to act on the part of Regina Wynn Benton Buffkin or her family.

55.     As a result of the crash, as well as the negligence, carelessness, and recklessness of Defendants, Rhonda Benton Rabb, the Estate of Rhonda Benton Rabb, Plaintiff, and the Decedents' family, have suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses including, but not limited to:

a.     Funeral and burial expenses;

b.     Costs of Estate administration;

c.     Profound psychological and emotional loss;

d.     Pre-death fright and fear of impending death;

e.     Conscious pain and suffering;

f.     Loss of the comfort, care, and society of Rhonda Benton Rabb; and

g.     Such other injuries, damages and losses described more fully herein and compensable at law under the Wrongful Death Act and the Survival Act, and the decisional law of South Carolina interpreting those Acts.

56.     The economic and non-economic injuries, damages and losses suffered by the Estate of Rhonda Benton Rabb, Plaintiff, Britany M. Verikas, and the Decedent's family, were caused solely and exclusively by the negligence of Defendants, as described herein, and were not caused or contributed to by any act or failure to act on the part of Rhonda Benton Rabb or her family.

57.     At all relevant times hereto, Defendants Elkay, Elkay Services and TQL knew or should have known that WMK had an unsafe history in performing services as a motor carrier including, but not limited to:

a.     Speeding 11-14 miles per hour over the posted limit in violation of FMCSA 392.2 SLLS3 – March 2021;

b.     Operating a property-carrying commercial motor vehicle while impaired by fatigue in violation of FMCSA 392.3-FPROP – March 2021;

    c.  Failing to maintain supply of blank drivers records of duty in violation of FMCSA 395.22H4 – March 2021; and

    d.  Failing to note malfunction that requires use of paper logs in violation of FMCSA 395.34A1 – March 2021.

58.    Moreover, as a motor carrier, WMK has exceeded the national average for out of service violations overall at 21.71% which exceeds the national average of 18.29%.

59.    At all relevant times hereto, Plaintiffs acted in a safe, prudent, and reasonable manner and in no way contributed to the injuries or damages outlined herein.

60.    Upon information and belief, at the time of the crash, Mr. Singh was in violation of the FMCSR hours of service limits and consciously chose to operate the Freightliner in a fatigued condition.

61.    Moreover, Defendants participated in, knew, or should have known that Mr. Singh was operating over hours, driving while fatigued and otherwise operating the Freightliner in an unsafe, dangerous and reckless condition in violation of the FMCSR and South Carolina law.

62.    At all relevant times, upon information and belief, Mr. Singh's fatigued condition impaired his judgment, perception, and reaction to such an extent that he inexplicably struck the Toyota carrying Plaintiffs' Decedents without braking.

63.    At all relevant times, upon information and belief, Mr. Singh drove in a distracted manner such that he failed to appreciate the traffic slowing down ahead of him prior to impacting the Toyota carrying Plaintiffs' Decedents.

64.    At all relevant times, Defendants knew of Mr. Singh's reckless and dangerous driving record and chose to hire him anyway.

65.    At all relevant times, Defendants knew of the poor safety record of WMK and chose to hire them to transport the subject load anyway.

66.    This information was known and/or readily available to Defendants, all before the Crash that fatally killed Regina Wynn Benton Buffkin and Rhonda Benton Rabb.

67.    At all relevant times, upon information and belief, Defendants knew or should have known that Mr. Singh had a propensity for violations of unsafe driving and speeding.

68.    At all relevant times, the FMCSA as part of its Safety Management System maintained a user-friendly website that was available to the public that tracks the registration, safety and compliance of all motor carriers that have a USDOT number, like Defendants. The online FMCSA information also provided historical information and easy to understand explanations of how to use the site and what each category of information and score means.  The FMCSA's online public information also listed the crashes and safety violations for the last 24 months.

69.    Defendants were aware of the FMCSA website.

70.    At all relevant times, the FMCSA website contained information that should have alerted Defendants that WMK and TQL were unsafe, and/or not properly authorized motor carriers that utilized unsafe drivers and equipment.

71.    Moreover, despite Mr. Singh's deplorable safety record, incompetence, and dangerous behavior, Defendants negligently, recklessly and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers.

72.    At all relevant times, Defendants exercised complete control over the dispatching of the Freightliner driven by Mr. Singh at the time of the crash.

73.    At all relevant times, Defendants exercised complete control over the routing of the Freightliner driven by Mr. Singh at the time of the crash.

74.    At all relevant times, Elkay and Elkay Sales had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Singh, WMK and TQL should all be considered agents of Elkay and Elkay Sales.

75.    At all relevant times, TQL knowingly mispresented themselves in violation of FMCSA § 371.7(b).

76.    At all relevant times, TQL is listed as the carrier on the bill of lading dated July 14, 2021

16

77.    "A broker shall not, directly or indirectly, represent its operations to be that of a carrier." See FMCSA § 371.7(b).



78.    The July 14, 2022 bill of lading undeniably portrays that TQL held itself out as a motor carrier in violation of FMCSA § 371.7(b).

**COUNT I**
**WRONGFUL DEATH**
**ESTATE OF REGINA WYNN BENTON BUFFKIN**

**HOGAN BUFFKIN, AS THE PERSONAL REPRESENTATIVE OF THE
ESTATE OF REGINA WYNN BENTON BUFFKIN v. WMK TRUCKING,**

**INC., ELKAY SOUTHERN CORPORATION, ELKAY SALES, INC. AND TOTAL QUALITY LOGISTICS, LLC**

79.    The preceding paragraphs are incorporated herein as though fully set forth below.

80.    Plaintiff, Hogan Buffkin, as Personal Representative of the Estate of Regina Wynn Benton Buffkin, deceased, brings this Wrongful Death Action on behalf of the Estate of Regina Wynn Benton Buffkin under and by virtue of the Wrongful Death Act, S.C. Code Ann. § 15-21-20, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

81.    As a result of the negligent acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Regina Wynn Benton Buffkin, suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the aforementioned beneficiaries under the Wrongful Death Act.

82.    Plaintiff, Hogan Buffkin, Personal Representative of the Estate of Regina Wynn Benton Buffkin, deceased, hereby claim the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act.

83.    Plaintiff, Hogan Buffkin, Personal Representative of the Estate of Regina Wynn Benton Buffkin, deceased, claims damages for the pecuniary losses suffered by reason of the death of Regina Wynn Benton Buffkin, including but not

limited to, damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated by reason of the injuries which caused Regina Wynn Benton Buffkin's death.

84.    Plaintiff, Hogan Buffkin, as Personal Representative of the Estate of Regina Wynn Benton Buffkin, deceased, claims damages for the loss of earnings, mental shock and suffering, pecuniary loss, wounded feelings, grief, sorrow, loss of society and companionship and/or other losses as specifically recognized under the Wrongful Death Act and its South Carolina case law progeny, including Clark v. S.C. Dep't of Pub. Safety, 353 S.C. 291, 310 (Ct. App. 2002), including profound psychological and emotional loss, which they would have received from the decedent had her death not occurred.

85.    Plaintiff, Hogan Buffkin, as Personal Representative of the Estate of Regina Wynn Benton Buffkin, deceased, claim the loss of the pecuniary value of the services which the decedent could have been expected to provide to the Wrongful Death beneficiaries during her lifetime had her death not occurred.

**WHEREFORE**, Plaintiff, Hogan Buffkin, Personal Representative of the Estate of Regina Wynn Benton Buffkin, hereby seeks all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount to be determined by the jury.

## COUNT II
## SURVIVAL ACTION

**ESTATE OF REGINA WYNN BENTON BUFFKIN**

**HOGAN BUFFKIN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF REGINA WYNN BENTON BUFFKIN v. WMK TRUCKING, INC., ELKAY SOUTHERN CORPORATION, ELKAY SALES, INC. AND TOTAL QUALITY LOGISTICS, LLC**

86.    The preceding paragraphs are incorporated herein as though fully set forth below.

87.    Plaintiff, Hogan Buffkin, as the Personal Representative of the Estate of Regina Wynn Benton Buffkin, brings this Survival Action on behalf of Ms. Buffkin under and by virtue of the Survival Act, S.C. Code Ann. § 15-5-90 *et. seq.* and S.C. Code Ann. § 15-5-100, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

88.    As a result of the negligent acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Regina Wynn Benton Buffkin suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the Estate of Regina Wynn Benton Buffkin under the Survival Act.

89.    Plaintiff, Hogan Buffkin, as the Personal Representative of the Estate of Regina Wynn Benton Buffkin, deceased, claims the full measure of damages recoverable under and by virtue of the Survival Act and the decisional law interpreting the Act.

90.    On behalf of Decedent's Estate, Plaintiff claims damages for all economic losses to Regina Wynn Benton Buffkin's Estate, as specifically recognized under the Survival Act and its South Carolina case law progeny, including, but not limited to, the Decedent's total estimated future earning capacity.

91.    On behalf of Decedent's Estate, Plaintiff claims damages for the Decedent's physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures, and all other damages and losses recoverable specifically under the Survival Act and its South Carolina case law progeny interpreting the Act.

**WHEREFORE**, Plaintiff, Hogan Buffkin, Personal Representative of the Estate of Regina Wynn Benton Buffkin, hereby seeks all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount in to be determined by a jury.

## <u>COUNT III</u>

### WRONGFUL DEATH
### ESTATE OF RHONDA BENTON RABB

### BRITANY M. VERIKAS, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF RHONDA RABB v. WMK TRUCKING, INC., ELKAY SOUTHERN CORPORATION, ELKAY SALES, INC. AND TOTAL QUALITY LOGISTICS, LLC

92.    The preceding paragraphs are incorporated herein as though fully set forth below.

93.    Plaintiff, Britany M. Verikas, as Personal Representative of the Estate of Rhonda Benton Rabb, deceased, brings this Wrongful Death Action on behalf of the Estate of Rhona Benton Rabb under and by virtue of the Wrongful Death Act, S.C. Code Ann. § 15-21-20, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

94.    As a result of the negligent acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Rhonda Benton Rabb, suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the aforementioned beneficiaries under the Wrongful Death Act.

95.    Plaintiff, Britany M. Verikas, Personal Representative of the Estate of Rhonda Benton Rabb, deceased, hereby claim the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act.

96.    Plaintiff, Britany M. Verikas, Personal Representative of the Estate of Rhonda Benton Rabb, deceased, claims damages for the pecuniary losses suffered by reason of the death of Rhonda Benton Rabb, including but not limited to, damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated by reason of the injuries which caused Rhonda Benton Rabb's death.

97.     Plaintiff Britany M. Verikas, as Personal Representative of the Estate of Rhonda Benton Rabb, deceased, claims damages for the loss of earnings, mental shock and suffering, pecuniary loss, wounded feelings, grief, sorrow, loss of society and companionship and/or other losses as specifically recognized under the Wrongful Death Act and its South Carolina case law progeny, including Clark v. S.C. Dep't of Pub. Safety, 353 S.C. 291, 310 (Ct. App. 2002), including profound psychological and emotional loss, which they would have received from the decedent had her death not occurred.

98.     Plaintiff, Britany M. Verikas, as Personal Representative of the Estate of Rhonda Benton Rabb, deceased, claim the loss of the pecuniary value of the services which the decedent could have been expected to provide to the Wrongful Death beneficiaries during her lifetime had her death not occurred.

**WHEREFORE**, Plaintiff, Britany M. Verikas, Personal Representative of the Estate of Rhonda Benton Rabb, hereby seeks all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount to be determined by a jury.

<u>COUNT IV</u>
**SURVIVAL ACTION
ESTATE OF RHONDA BENTON RABB**

**BRITANY M. VERIKAS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RHONDA BENTON RABB v. WMK TRUCKING, INC., ELKAY SOUTHERN CORPORATION, ELKAY SALES, INC. AND TOTAL QUALITY LOGISTICS, LLC**

99.    The preceding paragraphs are incorporated herein as though fully set forth below.

100.    Plaintiff, Britany M. Verikas, as the Personal Representative of the Estate of Rhonda Benton Rabb, brings this Survival Action on behalf of Ms. Rabb under and by virtue of the Survival Act, S.C. Code Ann. § 15-5-90 *et. seq.* and S.C. Code Ann. § 15-5-100, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

101.    As a result of the negligent acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Rhonda Benton Rabb suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the Estate of Rhonda Benton Rabb under the Survival Act.

102.    Plaintiff, Britany M. Verikas, as the Personal Representative of the Estate of Rhonda Benton Rabb, deceased, claims the full measure of damages recoverable under and by virtue of the Survival Act and the decisional law interpreting the Act.

103.    On behalf of Decedent's Estate, Plaintiff claims damages for all economic losses to Rhonda Benton Rabb's Estate, as specifically recognized under the Survival Act and its South Carolina case law progeny, including, but not limited to the Decedent's total estimated future earning capacity.

104.   On behalf of Decedent's Estate, Plaintiff claims damages for the Decedent's physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures, and all other damages and losses recoverable specifically under the Survival Act and its South Carolina case law progeny interpreting the Act.

**WHEREFORE**, Plaintiff, Britany M. Verikas, Personal Representative of the Estate of Rhonda Benton Rabb, hereby seeks all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount to be determined by a jury.

### COUNT V
### NEGLIGENCE/RECKLESSNESS

**HOGAN BUFFKIN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF REGINA WYNN BENTON BUFFKIN AND BRITANY M. VERIKAS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RHONDA BENTON RABB v. WMK TRUCKING, INC., ELKAY SOUTHERN CORPORATION, ELKAY SALES, INC. AND TOTAL QUALITY LOGISTICS, LLC as being vicariously liable for VIKRAMJEET SINGH**

105.   The preceding paragraphs are incorporated herein as though fully set forth below.

106.   At all times relevan hereto, Defendants **WMK Trucking, Inc., Elkay Southern Corporation, Elkay Sales, Inc., and Total Quality Logistics, LLC were vicariously liable for the actions and/or omissions of Defendant Singh.**

107.    The negligence, carelessness, and/or recklessness of Defendants, as being vicariously liable for the actions of Mr. Singh consisted of, but are not limited to the following:

    a.  Failing to maintain proper and adequate control of his Freightliner;

    b.  Failing to keep his eyes on the road at all times;

    c.  Failing to pay proper attention while operating his Freightliner on I-95;

    d.  Failing to take proper precautions in the operation of his Freightliner so as to avoid the collision that occurred;

    e.  Operating his Freightliner in a negligent, careless and reckless manner without due regard to the rights and safety of Plaintiff;

    f.  Failing to exercise due care and caution under all of the existing circumstances;

    g.  Failing to have his Freightliner under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

    h.  Failing to remain alert;

    i.  Operating his Freightliner in a distracted manner;

    j.  Traveling at an excessive rate of speed under the circumstances;

k.  Violating the applicable rules, regulations, and laws pertaining to the safe and proper operation of motor vehicles and/or tractor trailers;

l.  Failing to operate his Freightliner in accordance with the Federal Motor Carrier Safety Regulations;

m.  Failing to properly control his Freightliner in light of the circumstances then and there existing, including traffic patterns existing on the roadway;

n.  Failing to make necessary and reasonable observations while operating his Freightliner;

o.  Failing to timely apply his brakes;

p.  Violating FMCSA Regulation 383 dealing with required knowledge and skills;

q.  Consciously choosing to drive at an unsafe speed given the circumstances;

r.  Consciously refusing to reduce speed in response to traffic patterns then and there existing on the roadway;

s.  Consciously choosing to disregard traffic patterns then and there existing on the roadway;

t.  Consciously choosing to switch lanes with total disregard to traffic lawfully using the roadway;

u.  Failing to perform a proper pre-trip inspection;

v.  Violating both the written and unwritten policies, rules, guidelines and regulations of Defendants;

w.  Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

x.  Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

y.  Failing to properly control his Freightliner unit in light of the circumstances then and there existing on the roadway;

z.  Failing to make necessary and reasonable observations while operating the Freightliner;

aa. Failing to take evasive action and/or failing to take appropriate and timely evasive action to avoid the crash with Plaintiffs;

bb. Violating Sections 383.110; 383.111; and 383.113 dealing with required knowledge and skill;

cc. Violating Section 395.1 with respect to hours of service of drivers;

dd. Making a conscious choice to drive in a fatigued condition knowing that driving in a fatigued condition impairs perception and judgment;

ee. Failing to adhere to the amount of driving hours limit;

ff. Causing the Crash due to being on the road more than the regulated number of hours;

gg. Operating the Freightliner in an unsafe condition in violation of Section 396.7;

hh. Failing to inspect the Freightliner before and during its operation in violation of Sections 396.9; 396.11; 396.13; and 396.17; and

ii. Acting with a conscious disregard for the rights and safety of others, including the Plaintiff.

108.    As a result of the above-stated acts and omissions, Plaintiffs suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiffs, Hogan Buffkin, as Personal Representative of the Estate of Regina Wynn Benton Buffkin and Britany M. Verikas, as Personal Representative of the Estate of Rhonda Benton Rabb, hereby seek all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount in to be determined by a jury, as well as other relief this Court determines to be just and proper.

## COUNT VI
## NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / "NEGLIGENT SELECTION" OF VIKRAMJEET SINGH

**HOGAN BUFFKIN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF REGINA WYNN BENTON BUFFKIN AND BRITANY M. VERIKAS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RHONDA BENTON RABB v. WMK TRUCKING, INC., ELKAY SOUTHERN CORPORATION, ELKAY SALES, INC. AND TOTAL QUALITY LOGISTICS, LLC**

109.   The preceding paragraphs are incorporated herein as though fully set forth below.

110.   The Defendants had an obligation and duty to hire, retain and supervise drivers who operate its vehicles in a safe and prudent manner.

111.   "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

112.   Defendants had an obligation to exercise reasonable care in selecting a competent and careful driver to move and transport the load.

113.   Plaintiffs' Decedents were tragically killed as a result of the unsafe driving of Mr. Singh.

114.   At all relevant times, Defendants were directly liable for the negligent and reckless hiring, supervision, and retention of driver Mr. Singh.

115.   The negligence, carelessness, and/or recklessness of Defendants, in the hiring, supervision and retention of Mr. Singh, consisted of the following:

      a.   Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Singh;

      b.   Failing to train and/or properly train Mr. Singh prior to allowing him to operate its Freightliner;

c.  Hiring and/or continuing to employ Mr. Singh despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

d.  Hiring and/or continuing to employ Mr. Singh despite the fact that he had a propensity for driving violations;

e.  Hiring and/or continuing to employ Mr. Singh despite the fact that he had a propensity for violating the "Rules of the Road" and FMCSR;

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Singh despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Singh to operate its Freightliner when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Singh to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

31

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

w. Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383;

aa. Failing to act upon and remedy violations of FMCSA regulation 395;

bb. Failing to act upon and remedy violations of FMCSA regulation 396.7;

cc. Failing to act upon and remedy violations of FMCSA regulation 396.9;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.11;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.13;

ff. Failing to act upon and remedy violations of FMCSA regulation 396.17;

gg. Failing to act upon and remedy known violations of industry standards;

hh. Acting in a conscious disregard for the rights and safety of Regina Wynn Benton Buffkin and Rhonda Benton Rabb;

ii. Failing to have appropriate policies and procedures with regard to hiring of drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

kk. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

ll. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

mm. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

nn. Violating all applicable provisions of the FMCSA;

oo. Failing to suspend, discipline, or provide remedial training to Mr. Singh prior to the Crash despite his history of unsafe driving practices; and

pp. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone

and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Singh.

116.   As a result of the above-stated acts and omissions, Plaintiffs have suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiffs, Hogan Buffkin, Personal Representative of the Estate of Regina Wynn Benton Buffkin and Britany M. Verikas, as Personal Representative of the Estate of Rhonda Benton Rabb, hereby seek all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount to be determined by a jury, as well as other relief this Court determines to be just and proper.

## COUNT VII
### NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / "NEGLIGENT SELECTION" OF WMK TRUCKING, INC.

### HOGAN BUFFKIN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF REGINA WYNN BENTON BUFFKIN AND BRITANY M. VERIKAS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RHONDA BENTON RABB v. ELKAY SOUTHERN CORPORATION, ELKAY SALES, INC. AND TOTAL QUALITY LOGISTICS, LLC

117.   The preceding paragraphs are incorporated herein as though fully set forth below.

118.   Defendants Elkay, Elkay Sales and TQL are subject to liability for physical harm caused to third persons for their failure to exercise reasonable care

to select and employ competent and careful carriers to transport loads, which is an activity that involves a high risk of physical harm, unless skillfully and carefully done.

119.   "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

120.   Defendants Elkay, Elkay Sales and TQL had a conscious obligation and duty to select, hire, retain and supervise carriers to transport loads in a safe manner.

121.   Defendants Elkay, Elkay Sales and TQL had a conscious obligation and duty to exercise reasonable care in selecting a competent and careful carrier to transport loads.

122.   At all relevant times, Elkay, Elkay Sales and TQL knew or should have known that Defendant WMK had an unsafe history in performing services as a motor carrier including, but not limited to:

    a. Speeding 11-14 miles per hour over the posted limit in violation of FMCSA 392.2 SLLS3 – March 2021 (Future Crash Probability:45%);

    b. Operating a property-carrying commercial motor vehicle while impaired by fatigue in violation of FMCSA 392.3-FPROP – March 2021 (Future Crash Probability: 50%);

      c.  Failing to maintain supply of blank drivers records of duty in violation of FMCSA 395.22H4 – March 2021; (Future Crash Probability: 45%) and

      d.  Failing to note malfunction that requires use of paper logs in violation of FMCSA 395.34A1 – March 2021 (Future Crash Probability: 45%).

123.   Moreover, as a motor carrier, WMK has exceeded the national average for out of service violations overall at 21.71% which exceeds the national average of 18.29%.

124.   Additionally, Defendants Elkay, Elkay Sales and TQL were negligent in the selection of WMK as a carrier because it knew or should have known that WMK was negligent/reckless in the following ways:

      a.  Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Singh;

      b.  Failing to train and/or properly train Mr. Singh prior to allowing him to operate its Freightliner;

      c.  Hiring and/or continuing to employ Mr. Singh despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

      d.  Hiring and/or continuing to employ Mr. Singh despite the fact that he had a propensity for driving violations;

      e.  Hiring and/or continuing to employ Mr. Singh despite the fact that he had a propensity for violating the "Rules of the Road" and FMCSR

      f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Singh despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Singh to operate its Freightliner when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Singh to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Consciously choosing to operate its fleet in interstate commerce when it knew that it did not possess proper operating authority;

t.  Consciously choosing to operate its fleet in interstate commerce without the proper state and federal licensing;

u.  Failing to monitor and/or regulate the actions of its drivers;

v.  Failing to monitor and/or regulate the hours of its drivers;

w.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

x.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

y.  Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

z.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

aa. Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

bb. Failing to act upon and remedy violations of FMCSA regulation 383;

cc. Failing to act upon and remedy violations of FMCSA regulation 395;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.7;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.9;

ff. Failing to act upon and remedy violations of FMCSA regulation 396.11;

gg. Failing to act upon and remedy violations of FMCSA regulation 396.13;

hh. Failing to act upon and remedy violations of FMCSA regulation 396.17;

ii. Failing to act upon and remedy violations of FMCSA regulation 392.71;

jj. Failing to act upon and remedy known violations of industry standards;

kk. Acting in a conscious disregard for the rights and safety of Plaintiffs;

ll. Failing to have appropriate policies and procedures with regard to hiring of drivers;

mm.  Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

nn. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

oo. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

pp. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

qq. Violating all applicable provisions of the FMCSA;

rr. Failing to suspend, discipline, or provide remedial training to Mr. Singh prior to the Crash despite his history of unsafe driving practices; and

ss. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Singh.

125.    As a result of the above-stated acts and omissions, Plaintiffs suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiffs, Hogan Buffkin, as Personal Representative of the Estate of Regina Wynn Benton Buffkin and Britany M. Verikas, as Personal Representative of the Estate of Rhonda Benton Rabb, hereby seek all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount to be determined by a jury, as well as other relief this Court determines to be just and proper.

## <u>COUNT VIII</u>
## NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / "NEGLIGENT SELECTION" OF TOTAL QUALITY LOGISTICS, LLC.

## HOGAN BUFFKIN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF REGINA WYNN BENTON BUFFKIN AND BRITANY M. VERIKAS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RHONDA BENTON RABB v. ELKAY SOUTHERN CORPORATION AND ELKAY SALES, INC.

126.    The preceding paragraphs are incorporated herein as though fully set forth below.

127.   Defendants Elkay and Elkay Sales are subject to liability for physical harm caused to third persons for their failure to exercise reasonable care to select and employ competent and careful carriers to transport loads, which is an activity that involves a high risk of physical harm, unless skillfully and carefully done.

128.   "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

129.   Defendants Elkay and Elkay Sales had a conscious obligation and duty to select, hire, retain and supervise carriers to transport loads in a safe manner.

130.   Defendants Elkay and Elkay Sales had a conscious obligation and duty to exercise reasonable care in selecting a competent and careful carrier to transport loads.

131.   At all relevant times, Defendants Elkay and Elkay Sales had an obligation to ensure that TQL was going to hire qualified drivers.

132.   At all relevant times, Defendants Elkay and Elkay Sales had an obligation to ensure that TQL would deliver its freight in a safe manner consistent with all provisions of the FMCSR.

133.   At all relevant times, Defendants Elkay and Elkay Sales knew or should have known that TQL was not qualified as a motor carrier to transport freight in interstate commerce.

134.   Additionally, Defendants Elkay and Elkay Sales were negligent in the selection of TQL as a carrier because it knew or should have known that TQL was negligent/reckless in the following ways:

a.   Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Singh;

b.   Failing to train and/or properly train Mr. Singh prior to allowing him to operate its Freightliner;

c.   Hiring and/or continuing to employ Mr. Singh despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

d.   Hiring and/or continuing to employ Mr. Singh despite the fact that he had a propensity for driving violations;

e.   Hiring and/or continuing to employ Mr. Singh despite the fact that he had a propensity for violating the "Rules of the Road" and FMCSR

f.   Failing to do preventable analysis as recommended by the FMSCR;

g.   Failing to have an appropriate disciplinary policy within the company;

h.   Hiring and/or continuing to employ Mr. Singh despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Singh to operate its Freightliner when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Singh to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Consciously choosing to operate its fleet in interstate commerce when it knew that it did not possess proper operating authority;

t.  Consciously choosing to operate its fleet in interstate commerce without the proper state and federal licensing;

u.  Failing to monitor and/or regulate the actions of its drivers;

v.  Failing to monitor and/or regulate the hours of its drivers;

w.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

x.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

y.  Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

z.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

aa. Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

bb. Failing to act upon and remedy violations of FMCSA regulation 383;

cc. Failing to act upon and remedy violations of FMCSA regulation 395;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.7;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.9;

ff.  Failing to act upon and remedy violations of FMCSA regulation 396.11;

gg. Failing to act upon and remedy violations of FMCSA regulation 396.13;

hh. Failing to act upon and remedy violations of FMCSA regulation 396.17;

ii. Failing to act upon and remedy violations of FMCSA regulation 392.71;

jj. Failing to act upon and remedy known violations of industry standards;

kk. Acting in a conscious disregard for the rights and safety of Plaintiffs;

ll. Failing to have appropriate policies and procedures with regard to hiring of drivers;

mm. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

nn. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

oo. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

pp. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

qq. Violating all applicable provisions of the FMCSA;

rr. Failing to suspend, discipline, or provide remedial training to Mr. Singh prior to the Crash despite his history of unsafe driving practices; and

ss. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists

exposed to its unsafe commercial motor vehicle drivers like Mr. Singh.

135.   As a result of the above-stated acts and omissions, Plaintiffs suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiffs, Hogan Buffkin, as Personal Representative of the Estate of Regina Wynn Benton Buffkin and Britany M. Verikas, as Personal Representative of the Estate of Rhonda Benton Rabb, hereby seek all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount to be determined by a jury, as well as other relief this Court determines to be just and proper.

## COUNT IX
## JOINT VENTURE

**HOGAN BUFFKIN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF REGINA WYNN BENTON BUFFKIN AND BRITANY M. VERIKAS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RHONDA BENTON RABB v. WMK TRUCKING, INC., ELKAY SOUTHERN CORPORATION, ELKAY SALES, INC. AND TOTAL QUALITY LOGISTICS, LLC**

136.   The preceding paragraphs are incorporated herein as though fully set forth below.

137.   On the above-referenced date, place and time, Defendants were engaged in a joint venture to haul goods and material in interstate commerce for profit.

138.   Upon and information and belief, Mr. Singh was paid by all Defendants for this transportation, including allowances for fuel costs.

139.   Upon information and belief, Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile application to track status of shipment from origin to delivery.

140.   As a result of the transportation, Defendants earned, or intended to earn, a profit.

141.   On the above referenced date, place and time, Defendants controlled the Freightliner through its duly authorized agent, servant, and/or employee, Mr. Singh.

142.   On the above referenced date, place and time, Mr. Singh was performing a service for the benefit of Defendants, namely the transportation of goods and material for profit.

143.   Defendants were aware that Mr. Singh was transporting the goods and materials.

144.   Defendants had the right to control Mr. Singh in performing this service.

145.   Defendants exercised this control over Mr. Singh, inter alia, in the manner described fully herein.

146.   Defendants held out Mr. Singh as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Singh was an agent, servant, and/or employee of Defendants and they are vicariously liable for the acts and/or omissions of Mr. Singh.

147.   As a direct and proximate cause of the above stated acts and omissions, Plaintiffs suffered, inter alia, the serious, severe, permanent, and fatal injuries as has been previously stated herein.

**WHEREFORE**, Plaintiffs, Hogan Buffkin, Personal Representative of the Estate of Regina Wynn Benton Buffkin and Britany M. Verikas, as Personal Representative of the Estate of Rhonda Benton Rabb, hereby seek all damages allowed under the laws of the State of South Carolina, including punitive damages, in an amount to be determined by a jury, as well as other relief this Court determines to be just and proper.

Respectfully submitted:

**SOLOMON LAW GROUP, LLC**

BY:    s/ Carl L. Solomon
Carl L. Solomon, Esquire (Fed. ID 6684)
Robert L. Brown, Esquire (Fed. ID 10255)
3501 North Main Street
Columbia, SC 29203
(803) 391-3120
*Counsel for Plaintiffs*

Date: August 26, 2022

**DOUGLAS JENNINGS LAW FIRM, LLC**


BY:    *s/Douglas Jennings, Jr.*
        Douglas Jennings, Jr. Esquire (Fed. ID 2168)
        Mason William King, Esquire (Fed. ID 11425)
        J. Michael Baxley, Esquire (Fed. ID 1248)
        P.O. Box 995
        Bennettsville, SC 29512
        (843) 479-2865
        *Counsel for Plaintiff Buffkin Only*

Date: August 26, 2022